FILED
U. S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

SEP 0 1 2020

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**NUKOL BAILEY and MARK DANIELS,**        **PLAINTIFFS**
**Each Individually and on Behalf**
**of All Others Similarly Situated**

This case assigned to District Judge Baker
and to Magistrate Judge Kearney

vs.                No. 4:20-cv-1058- KGB

**CARE ABOVE ALL CARE, INC.**            **DEFENDANTS**
**and LEANNA GODLEY**

## ORIGINAL COMPLAINT—COLLECTIVE ACTION

COME NOW Plaintiffs Nukol Bailey and Mark Daniels (collectively "Plaintiffs"),

each individually and on behalf of others similarly situated, by and through their attorneys

Blake Hoyt and Josh Sanford of Sanford Law Firm, PLLC, and for their Original

Complaint—Collective Action ("Complaint") against Defendants Care Above All Care,

Inc., and Leanna Godley (collectively "Defendant" or "Defendants"), and in support

thereof, they do hereby state and allege as follows:

### I.    PRELIMINARY STATEMENTS

1.    Plaintiffs, each individually and on behalf of all others similarly situated,

bring this action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA")

and the Arkansas Minimum Wage Act ("AMWA"), Ark. Code Ann. § 11-4-201 *et seq.*, for

declaratory judgment, monetary damages, liquidated damages, prejudgment interest,

costs, and a reasonable attorney's fee, as a result of Defendants' commonly applied

policy and practice of failing to pay Plaintiffs and all others similarly situated a lawful

overtime wage as required by the FLSA and AMWA.

## II.    JURISDICTION AND VENUE

2.      The United States District Court for the Eastern District of Arkansas has subject matter jurisdiction over this suit under the provisions of 28 U.S.C. § 1331 because this suit raises federal questions under the FLSA.

3.      Accordingly, this Court has jurisdiction pursuant to 28 U.S.C. § 1331.

4.      Plaintiffs' claims under the AMWA form part of the same case or controversy and arise out of the same facts as the FLSA claims. Therefore, this Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a).

5.      The acts and omissions complained of herein were committed and had their principal effect, as described more fully below, within the Central Division of the Eastern District of Arkansas; therefore, venue is proper within this District pursuant to 28 U.S.C. § 1391.

## III.    THE PARTIES

6.      Plaintiff Nukol Bailey ("Bailey") is an individual and resident and domiciliary of Pulaski County.

7.      Plaintiff Mark Daniels ("Daniels") is an individual and resident and domiciliary of Pulaski County.

8.      Separate Defendant Care Above All Care, Inc. ("CAAC"), is a domestic, for-profit corporation created and existing under and by virtue of the laws of the State of Arkansas.

9.      CAAC maintains an office at 400 West Capitol Avenue, Suite 1700, Little Rock, Arkansas.

10.     CAAC's registered agent for service of process is Leanna Godley at 1900 South Summit Street, Little Rock, Arkansas 72202.

11.     Separate Defendant Leanna Godley ("Godley") is an individual and resident of the state of Arkansas.

12.     Defendants maintain a website at https://careaboveallcarellc.com/.

## IV.     FACTUAL ALLEGATIONS

13.     Plaintiffs repeat and re-allege all previous paragraphs of this Complaint as though fully incorporated in this section.

14.     Godley is the owner, principal, officer and/or director of CAAC.

15.     Godley manages and controls the day-to-day operations of CAAC, including but not limited to the decision to not pay Plaintiff a sufficient premium for hours worked in excess of forty (40) per week.

16.     CAAC's annual gross volume of sales made or business done was not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated) during the relevant time period.

17.     During the relevant time period, Defendants had at least two employees that handle, sell, or otherwise work on goods or materials that have been moved in or produced for interstate commerce, such as office supplies and medical equipment.

18.     Within the three years preceding the filing of this Complaint, Defendants have continuously employed at least four employees.

19.     Defendants were at all times relevant hereto Plaintiffs' employer and are and have been engaged in interstate commerce as that term is defined under the FLSA.

20.     Defendants employed Plaintiffs, including the creation and maintenance of the pay policy applicable to Plaintiffs, the power to supervise, hire, fire and discipline Plaintiffs, and the power to set the schedule and conditions of Plaintiffs' work.

21.     CAAC provides in-home, non-medical services to individuals needing assistance with activities of daily living and personal services.

22.     Bailey worked for Defendants from 2018 until February of 2020 as a Caregiver, and from February of 2020 until July of 2020 as a Lead Direct Supervisor.

23.     Defendants classified Bailey as an hourly employee, non-exempt from the overtime requirements of the FLSA, until May of 2020 when they switched her to salary and stopped paying her overtime.

24.     Bailey's duties did not change when she was switched to salary.

25.     Daniels worked for Defendants from October of 2019 until April of 2020 as a Caregiver, as a Lead Direct Supervisor from April of 2020 until May of 2020, and again as a Caregiver from May of 2020 to August of 2020.

26.     Defendants classified Daniels as an hourly employee, non-exempt from the overtime requirements of the FLSA, until July of 2020 when they switched him to salary and stopped paying him overtime.

27.     Daniels's duties did not change when he was switched to salary.

28.     Although Defendants purported to pay Plaintiffs a salary during part of their tenure with Defendant, if Plaintiffs took time off work, wages were deducted from their paycheck.

29.     Defendants also employed other Caregivers and other Lead Direct Supervisors.

30.     At all times material herein, Plaintiffs have been entitled to the rights, protections and benefits provided under the FLSA and the AMWA.

**A.     Caregivers**

31.     As Caregivers, Plaintiffs' duties included taking care of Defendant's clients, including distributing medicine, bathing and feeding.

32.     Other Caregivers had the same or similar job duties as Plaintiffs.

33.     As Caregivers, Plaintiffs regularly worked over forty hours per week.

34.     Other Caregivers also regularly or occasionally worked over forty hours per week.

35.     It was Defendants' commonly applied practice not to pay Plaintiffs and other Caregivers one and one half times their regular rates of pay for all hours worked over forty in a single workweek.

36.     Defendants sometimes paid Caregivers an hourly rate, and sometimes paid them a salary.

37.     When Bailey worked as a Caregiver, she was paid an hourly rate.

38.     When Daniels was a Caregiver, he was paid hourly until July of 2020, when Defendant began paying him a salary.

39.     When Caregivers were paid an hourly rate, Defendants paid Plaintiffs and other Caregivers a rate equal to their regular rate of pay for all hours worked with no overtime premium for hours worked over forty in a week.

40.     When Caregivers were paid a salary, Defendants did not pay them an overtime premium for hours worked over forty in a week.

41.     Plaintiffs and other Caregivers did not hire or fire any other employee, nor were their recommendations as to hiring or firing given any particular weight.

42.     Plaintiffs and other Caregivers did not manage the enterprise or a customarily recognized division of the enterprise.

43.     Plaintiffs and other Caregivers did not exercise independent judgment or discretion as to matters of significance.

44.     When Daniels and other Caregivers were paid a salary, they were misclassified by Defendants as exempt from the overtime requirements of the FLSA.

**B.     Lead Direct Supervisors**

45.     As Lead Direct Supervisors, Plaintiffs duties included the same duties as Caregivers, and were additionally required to cover shifts for other Caregivers when necessary, and were responsible for grocery shopping for Defendant's clients and taking Defendant's clients to doctor appointments.

46.     Other Lead Direct Supervisors had similar duties to Plaintiffs.

47.     As Lead Direct Supervisors, Plaintiffs regularly worked more than forty hours per week.

48.     Other Lead Direct Supervisors also regularly or occasionally worked over forty hours per week.

49.     It was Defendants' commonly applied practice not to pay Plaintiffs and other Lead Direct Supervisors one and one half times their regular rates of pay for all hours worked over forty in a single workweek.

50.     Defendants sometimes paid Lead Direct Supervisors an hourly rate, and sometimes paid them a salary.

51.    When Bailey worked as a Lead Direct Supervisor, she was paid an hourly rate until May of 2020, and then was paid a salary until July of 2020.

52.    When Daniels worked as a Lead Direct Supervisor, he was paid an hourly rate.

53.    When Lead Direct Supervisors were paid an hourly rate, Defendants paid Plaintiffs and other Lead Direct Supervisors a rate equal to their regular rate of pay for all hours worked with no overtime premium for hours worked over forty in a week.

54.    When Lead Direct Supervisors were paid a salary, Defendants did not pay them an overtime premium for hours worked over forty in a week.

55.    Plaintiffs and other Lead Direct Supervisors did not hire or fire any other employee, nor were their recommendations as to hiring and firing given any particular weight.

56.    Plaintiffs and other Lead Direct Supervisors did not manage the enterprise or a customarily recognized division of the enterprise.

57.    Plaintiffs and other Lead Direct Supervisors did not exercise independent judgment or discretion as to matters of significance.

58.    When Plaintiffs and other Lead Direct Supervisors were paid a salary, Defendants misclassified them as exempt from the overtime requirements of the FLSA.

C.    **Off-the-Clock Work**

59.    It was Defendants' commonly applied practice not to pay Plaintiffs for all the hours during which they performed labor for Defendant.

60.    Specifically, Plaintiffs were not allowed to leave work until the next shift came to relieve them because Defendant's clients could not be left alone. Plaintiffs spent

between one and three hours each week working off-the-clock after their shift ended, waiting for the next shift to relieve them.

61.    Bailey was also required to take clients to and from the hospital, but was not paid for the time spent doing so. Bailey estimates she spent around ten hours each week taking clients to and from the hospital which went uncompensated.

62.    Bailey occasionally (approximately six times total) was required to work two twelve-hour shifts over the weekend for which she was not paid.

63.    Plaintiffs regularly reported all of their time to Defendants, but Defendants refused to compensate Plaintiffs for all the time worked.

64.    At all relevant times herein, Defendants failed to accurately record all of the time worked off-the-clock by Plaintiffs and failed to properly compensate all of the off-the-clock hours.

65.    Defendants knew or should have known that the job duties of Plaintiffs required Plaintiffs to work hours in excess of their recorded hours, yet Defendants failed and refused to compensate Plaintiffs for their work as required by the FLSA.

66.    As a result of these policies, Defendants failed to pay Plaintiffs and other hourly-paid employees a lawful overtime premium for all of the hours they worked in excess of forty (40) hours in a week.

### D.    Mileage

67.    Plaintiffs were required to use their own vehicles to drive Defendant's clients to doctor appointments, the grocery store, the laundromat, and other places.

68.    Plaintiffs drove over one hundred miles each week while performing their duties for Defendants.

69.     Defendants did not reimburse Plaintiffs for gas, mileage and automobile expenses.

70.     According to the Internal Revenue Service, the standard mileage rate for the use of a car during 2019 was 58 cents per mile.

71.     As a result of the automobile expenses incurred by Plaintiffs, they regularly provided a "kick back" to Defendants per 29 C.F.R. § 531.35, which led to further overtime pay violations.

72.     At all times relevant hereto, Defendants were aware of the minimum wage and overtime requirements of the FLSA.

## V.     REPRESENTATIVE ACTION ALLEGATIONS

73.     Plaintiffs repeat and re-allege all previous paragraphs of this Complaint as if fully set forth in this section.

74.     Plaintiffs bring their claims for relief for violation of the FLSA as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b).

75.     Plaintiffs bring their FLSA claims on behalf of all Caregivers and Lead Direct Supervisors employed by Defendants at any time within the applicable statute of limitations period, who are entitled to payment of the following types of damages:

A.     Payment for all hours worked, including payment of lawful overtime premiums for all hours worked for Defendants in excess of forty (40) hours in a workweek; and

B.     Liquidated damages; and

C.     Attorneys' fees and costs.

76.     In conformity with the requirements of FLSA Section 16(b), each Plaintiff has filed or will soon a written Consent to Join this lawsuit.

77.     The relevant time period dates back three years from the date on which Plaintiffs' Original Complaint—Collective Action was filed herein and continues forward through the date of judgment pursuant to 29 U.S.C. § 255(a).

78.     The members of the proposed FLSA Collective are similarly situated in that they share these traits:

A.      They worked as Caregivers or Lead Direct Supervisors;

B.      They had the same or substantially similar job duties;

C.      They recorded their time in the same manner; and

D.      They were subject to Defendants' common policy of denying pay for all hours worked, including a lawful overtime premium for hours worked over forty (40) per work week.

79.     Plaintiff is unable to state the exact number of the potential members of the Caregiver FLSA Collective but believes that the group exceeds fifty (50) persons.

80.     Defendants can readily identify the members of the Section 16(b) Collective. The names and physical and mailing addresses of the FLSA collective action plaintiffs are available from Defendants.

## VI.     FIRST CAUSE OF ACTION
### (Individual Claims for FLSA Violations)

81.     Plaintiffs repeat and re-allege all the preceding paragraphs of this Complaint as if fully set forth in this section.

82.     29 U.S.C. §§ 206 and 207 require any enterprise engaged in commerce to pay all employees a minimum wage for all hours worked up to forty (40) in one week and

to pay one and one-half times regular wages for all hours worked over forty (40) hours in a week, unless an employee meets certain exemption requirements of 29 U.S.C. § 213 and all accompanying Department of Labor regulations.

83.     While Defendants paid Plaintiffs hourly, Defendants classified Plaintiffs as nonexempt from the overtime requirements of the FLSA.

84.     While Defendants paid Plaintiffs salaried, Defendants misclassified Plaintiffs as exempt from the overtime requirements of the FLSA.

85.     During the relevant time period, Defendants unlawfully refrained from paying Plaintiff a lawful overtime premium for hours over forty per week, despite Plaintiffs' entitlement thereto.

86.     Defendants' failure to pay Plaintiff all overtime wages owed was willful.

87.     By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiffs for monetary damages, liquidated damages, and costs, including reasonable attorneys' fees, for all violations that occurred within the three (3) years prior to the filing of this Complaint.

## VII.     SECOND CAUSE OF ACTION
### (Collective Action Claim for Violations of the FLSA)

88.     Plaintiffs repeat and re-allege all previous paragraphs of this Complaint as though fully incorporated in this section.

89.     Plaintiffs, each individually and on behalf of all others similarly situated, asserts this claim for damages and declaratory relief pursuant to the FLSA, 29 U.S.C. § 201, *et seq.*

90.     At all relevant times, Defendants have been, and continue to be, an "employer" of Plaintiffs and all those similarly situated within the meaning of the FLSA, 29 U.S.C. § 203.

91.     Defendants classified Plaintiffs and all similarly situated members of the FLSA Collective as hourly employees, nonexempt from the overtime requirements of the FLSA, or misclassified them as salaried employees, exempt from the overtime requirements of the FLSA.

92.     Despite the entitlement of Plaintiffs and those similarly situated to overtime payments under the FLSA, Defendants failed to pay Plaintiff and all those similarly situated a lawful overtime rate of one and one-half times their regular rates of pay for all hours worked over forty (40) in each one-week period.

93.     In the past three years, Defendants have employed many Caregivers and Lead Direct Supervisors.

94.     Like Plaintiffs, these Caregivers and Lead Direct Supervisors regularly worked more than forty (40) hours in a week.

95.     Because these employees are similarly situated to Plaintiffs, and are owed unpaid wages and overtime for the same reasons, the opt-in class may be properly defined as follows:

**All Caregivers within the past three years.**
**All Lead Direct Supervisors within the past three years.**

96.     Defendants willfully failed to pay overtime wages to Plaintiffs and to others similarly situated.

97.     By reason of the unlawful acts alleged herein, Defendants are liable to Plaintiffs and all those similarly situated for monetary damages, liquidated damages, and

costs, including reasonable attorneys' fees, for all violations that occurred within the three (3) years prior to the filing of this Complaint.

## VIII.    THIRD CAUSE OF ACTION
### (Individual Claims for Violation of the AMWA)

98.    Plaintiffs repeat and re-allege all previous paragraphs of this Complaint as though fully incorporated in this section.

99.    Plaintiffs assert this claim for damages and declaratory relief pursuant to the AMWA, Arkansas Code Annotated §§ 11-4-201, *et seq.*

100.    At all relevant times, Defendants were Plaintiffs' "employer" within the meaning of the AMWA, Ark. Code Ann. § 11-4-203(4).

101.    Arkansas Code Annotated §§ 11-4-210 and 211 require employers to pay all employees a minimum wage for all hours worked up to forty in one week and to pay one and one-half times regular wages for all hours worked over forty hours in a week, unless an employee meets the exemption requirements of 29 U.S.C. § 213 and accompanying Department of Labor regulations.

102.    Defendants failed to pay Plaintiffs a lawful overtime premium for hours over forty per week, as required under the AMWA.

103.    Defendant failed to pay Plaintiffs for all hours worked.

104.    Defendants' failure to pay Plaintiffs a lawful overtime rate of pay for hours worked over forty (40) in a given week was in violation of the AMWA.

105.    Defendants' conduct and practices, as described above, were willful, intentional, unreasonable, arbitrary and in bad faith.

106.    By reason of the unlawful acts alleged in this Complaint, Defendants are liable to Plaintiffs for monetary damages, liquidated damages, costs, and a reasonable

attorney's fee provided by the AMWA for all violations which occurred beginning at least three (3) years preceding the filing of Plaintiff's initial complaint.

107.    Alternatively, should the Court find that Defendants acted in good faith in failing to pay Plaintiff as provided by the AMWA, Plaintiff is entitled to an award of prejudgment interest at the applicable legal rate.

## IX.    PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiffs Nukol Bailey and Mark Daniels, individually and on behalf of all others similarly situated, respectfully prays for declaratory relief and damages as follows:

A.    That each Defendant be summoned to appear and answer herein;

B.    That Defendants be required to account to Plaintiffs, the collective members, and the Court for all of the hours worked by Plaintiffs and the collective members and all monies paid to them;

C.    A declaratory judgment that Defendants' practices alleged herein violate the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and attendant regulations at 29 C.F.R. § 516, *et seq.;*

D.    A declaratory judgment that Defendants' practices alleged herein violate the Arkansas Minimum Wage Act and attendant regulations;

E.    Certification of, and proper notice to, together with an opportunity to participate in the litigation, all qualifying members of the collective action class;

F.    Judgment for damages for all unpaid overtime compensation under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and attendant regulations at 29 C.F.R. § 516, *et seq.;* and the Arkansas Minimum Wage Act.

G.     Judgment for liquidated damages pursuant to the Fair Labor Standards Act, 29 US.C. § 201, *et seq.*, and attendant regulations at 29 C.F.R. § 516, *et seq.*, in an amount equal to all unpaid overtime compensation owed to Plaintiffs and Putative Collective Members during the applicable statutory period;

H.     An order directing Defendants to pay Plaintiffs and members of the collective prejudgment interest, reasonable attorney's fees and all costs connected with this action; and

I.     Such other and further relief as this Court may deem necessary, just and proper.

Respectfully submitted,

**PLAINTIFFS NUKOL BAILEY and
MARK DANIELS, Each Individually and
on behalf of All Others Similarly Situated**

SANFORD LAW FIRM, PLLC
One Financial Center
650 South Shackleford Road, Suite 411
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040

Blake Hoyt
Ark. Bar No. 2014252
blake@sanfordlawfirm.com

Josh Sanford
Ark. Bar No. 2001037
josh@sanfordlawfirm.com

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**NUKOL BAILEY and MARK DANIELS,**                                    **PLAINTIFFS**
**Each Individually and on Behalf**
**of All Others Similarly Situated**


vs.                                    No. 4:20-cv-___


**CARE ABOVE ALL CARE, INC.**                                    **DEFENDANTS**
**and LEANNA GODLEY**

## CONSENT TO JOIN COLLECTIVE ACTION

        I was employed as an hourly Caregiver, an hourly Lead Direct Supervisor and a salaried Lead Direct Supervisor for Care Above All Care, Inc., and Leanna Godley within the past three (3) years. I understand this lawsuit is being brought under the Fair Labor Standards Act for <u>unpaid wages</u>. I consent to becoming a party-plaintiff in this lawsuit, to be represented by Sanford Law Firm, PLLC, and to be bound by any settlement of this action or adjudication by the Court.


_____
**NUKOL BAILEY**
September 1, 2020


**Josh Sanford, Esq.**
**SANFORD LAW FIRM, PLLC**
**One Financial Center**
**650 South Shackleford Road, Suite 411**
**Little Rock, Arkansas 72211**
**Telephone: (501) 221-0088**
**Facsimile: (888) 787-2040**
**josh@sanfordlawfirm.com**

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**NUKOL BAILEY and MARK DANIELS,**                    **PLAINTIFFS**
**Each Individually and on Behalf**
**of All Others Similarly Situated**


vs.                              No. 4:20-cv-___


**CARE ABOVE ALL CARE, INC.**                         **DEFENDANTS**
**and LEANNA GODLEY**

## CONSENT TO JOIN COLLECTIVE ACTION

I was employed as an hourly Caregiver, a salaried Caregiver and an hourly Lead Direct Supervisor for Care Above All Care, Inc., and Leanna Godley within the past three (3) years. I understand this lawsuit is being brought under the Fair Labor Standards Act for unpaid wages. I consent to becoming a party-plaintiff in this lawsuit, to be represented by Sanford Law Firm, PLLC, and to be bound by any settlement of this action or adjudication by the Court.


_____
**MARK DANIELS**
September 1, 2020




**Josh Sanford, Esq.**
**SANFORD LAW FIRM, PLLC**
**One Financial Center**
**650 South Shackleford Road, Suite 411**
**Little Rock, Arkansas 72211**
**Telephone: (501) 221-0088**
**Facsimile: (888) 787-2040**
**josh@sanfordlawfirm.com**